UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SONNIEL R. GIDARISINGH,

          Plaintiff,

   v.                                        Case No. 21-cv-17-pp

SERGEANT SONNTAG,
and CO GROVER,

          Defendants.

---

**ORDER SCREENING COMPLAINT**

---

Sonniel R. Gidarisingh, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants denied him his prescribed medications and subjected him to unnecessary pain in violation of federal and state law. On January 13, 2021, the plaintiff paid the full $402 filing fee. This decision screens his complaint. Dkt. No. 1.

## I.    Screening the Complaint

### A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

1

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued Sergeant Sonntag and Correctional Officer Grover, both of whom work at Waupun. Dkt. No. 1 at ¶¶4–5. The plaintiff alleges that since 2006, he has suffered from Gastric Esophagus Reflux Disease (GERD). Id. at ¶6. The plaintiff has been prescribed several different GERD medications over the years. Id. at ¶8. Most recently the plaintiff was prescribed Omerprozole and Famotidine to help control his GERD. Id. at ¶10. The plaintiff alleges that if he does not receive his medication for more than two days, he suffers "excruciating pain" in his chest, "as if someone is sawing on Plaintiff's heart and esophagus with a dull blade," that he likens to a heart attack; he says this pain lasts for days before the medications can get the GERD back under control. Id. at ¶¶7, 9.

The plaintiff says that since 2012, both medications, and all other medication he receives, have been controlled by security staff, and kept in the sergeant's cage of his housing unit. Id. at ¶17. When an inmate runs out of a medication, nurses personally bring the refills to the cell hall where the inmate is housed and give the refill to the sergeants to keep in the cage and to give to the inmates when the med cart runs out. Id. at ¶23.

During morning medication pass on July 5, 2020, Officer Grover approached the plaintiff's cell to distribute his medication. Id. at ¶¶11–12. The plaintiff requested the Famotidine, but Grover stated "there is no 'Famotidine' medication for you." Id. at ¶¶12–13. The plaintiff asked Grover to retrieve his medication from the refill bin, but Grover left and did not return or distribute

3

the plaintiff's Famotidine medication during the morning medication pass. Id. at ¶¶13–14. When the plaintiff saw Grover for the noon medication handout the same day, he asked why Grover had not brought him the Famotidine. Id. at ¶15. Grover allegedly yelled at the plaintiff and told him "to contact HSU [Health Services Unit] for [his] Famotidine" because he (Grover) would not contact medical staff about the plaintiff's medication. Id. The plaintiff asserts that Grover lied about the plaintiff's Famotidine not being in the medication refill bin and denied the plaintiff the medication. Id. at ¶16. The plaintiff says that he submitted a medication refill request to the HSU that same day, asking for a refill of Famotidine. Id. at ¶21. Two days later, he received a "pink copy" from HSU staff stating that the Famotidine "was sent to the NCH on June 30, 2020." Id. at ¶22.

The next day, July 6, 2020, Grover again did not distribute the plaintiff's Famotidine during the morning medication pass. Id. at ¶18. The plaintiff again asked for the medication, and he alleges that Grover again yelled at him, told him there was no Famotidine for him and left without providing the medication. Id. The same day, the plaintiff submitted another medication refill request, and the HSU again responded that staff had sent the Famotidine to the sergeant's cage on June 30, 2020. Id. at ¶30. The next day—July 7, 2020— Grover again told the plaintiff he had no Famotidine for him during the morning medication pass, and the plaintiff told Grover to contact the HSU about his medication because he was experiencing excruciating chest pain. Id. at ¶19. Grover still refused to contact the HSU about any of the plaintiff's

medication. Id. at ¶20. The plaintiff alleges he began to "experience[]
excruciating chest pains" that night. Id. at ¶24.

On July 7, 2020, the plaintiff wrote to Sergeant Sonntag to inform him
that Grover had not been distributing his Famotidine, causing his chest pains.
Id. at ¶25. Sonntag allegedly lied that the plaintiff's Famotidine was not in the
refill bin in the sergeant's cage. Id. at ¶26.

The next day, July 8, 2020, Grover again conducted the morning
medication pass; the plaintiff again asked for the medication and told Grover
that the medication was in the refill bin and that the plaintiff was having severe
chest and heart pain. Id. at ¶27. The plaintiff says that Grover yelled, "there is
no Famotidine for Plaintiff in the Meds bin." Id. at ¶28. The plaintiff attempted
to show Grover the response he'd received from the HSU, showing that the
medication had been sent on June 30, but Grover yelled that he did not want
to see anything from the HSU and walked away. Id. at ¶¶28–29. The plaintiff
then wrote a complaint about Grover and Sonntag to the HSU manager and
explained that he was not receiving the Famotidine and suffering chest pains.
Id. at ¶31. On July 9, 2020, Grover did not distribute any Famotidine to the
plaintiff, and the plaintiff says that his chest pains worsened. Id. at ¶32. The
plaintiff contacted the HSU again and told them he felt like he was having a
heart attack. Id.

The complaint alleges that on July 10, 2020, "Famotidine was found in
the medication refill bin" in the sergeant's cage. Id. at ¶33. The plaintiff asserts
that at that point, "it became obvious" that Grover and Sonntag intentionally

5

denied him his medication and subjected him to unnecessary pain from July 5 to 9, 2020. Id. He also says he learned from reviewing his medication record that Grover had falsified his medication record to state that the plaintiff had received Famotidine on July 5 and 6, 2020 (which he hadn't), and that the plaintiff had refused Famotidine on July 7 to 9, 2020 (which also was false). Id. at ¶¶34–35. The plaintiff says "someone" (he does not allege who) falsified the "HS' Medication log" to show that he had received Famotidine. Id. at ¶41.

On July 12, 2020, the plaintiff filed an inmate complaint against Grover and Sonntag for denying him Famotidine. Id. at ¶37. On July 20, 2020, institutional complaint examiner Tonia Moon acknowledged receiving the plaintiff's complaint, and a month later she recommended that his complaint be affirmed. Id. at ¶¶38–39. On September 12, 2020, Waupun Warden Hepp accepted Moon's recommendation to affirm the plaintiff's complaint. Id. at ¶40.

The plaintiff says Grover has denied him medication in the past, including Vitamin D medication May 17 through 20, 2020. Id. at ¶¶42–43. He alleges that on those occasions, Grover also yelled at him and refused to contact the HSU about the plaintiff's medications. Id. at ¶43. The plaintiff says Grover also falsified his medical records and falsely wrote that he had distributed Vitamin D to the plaintiff those days. Id. at ¶44. The plaintiff filed an inmate complaint about Grover's misconduct, but he does not say what the result was. Id. at ¶46.

The plaintiff alleges that Grover and Sonntag violated prison regulations by failing to give him his medication, falsifying medical records and refusing to

contact HSU staff about his medications. Id. at ¶¶47–48. He seeks to proceed on claims under the Eighth Amendment and under state tort law. Id. at ¶49. He requests compensatory and punitive damages against both defendants. Id. at ¶¶51(B)–(D).

C. Analysis

The complaint alleges a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition against cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition"—the objective component—and that the defendants were "deliberately indifferent to that condition"—the subjective component. Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer, 511 U.S. at 834); see Estelle, 429 U.S. at 103. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The complaint alleges that the defendants denied the plaintiff medication to treat GERD, which caused him severe and unnecessary pain. Those allegations satisfy the objective component of an Eighth Amendment claim. See Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (noting that a delay "in

7

treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain"). The question is whether the defendants knew the plaintiff was suffering but intentionally disregarded his pain by denying him medication that they knew was in the refill bin (or by refusing to check the refill bin to see if the medication was there), or whether they truly could not give him the medication because it was not available. If it is the former, the plaintiff has stated a claim that the defendants were deliberately indifferent. If it is the latter, the plaintiff may not have stated a claim, or at best, may have stated a claim for negligence, which does not violate the Eighth Amendment. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The plaintiff alleges that Grover repeatedly told the plaintiff he had no Famotidine for the plaintiff, refused to check the medication refill bin and refused to contact the HSU about the medication. As time went on, he did this despite the plaintiff telling Grover that he was experiencing excruciating chest pains. The plaintiff alleges that Grover not only refused to provide the medication but deliberately refused to inquire about the plaintiff's medication with the HSU, showing indifference to the plaintiff's pain. These allegations satisfy the subjective component of an Eighth Amendment claim. The court will allow the plaintiff to proceed on a deliberate indifference claim against Grover.

The plaintiff does not allege state that Sonntag was Grover's supervisor. The plaintiff did complaint about Grover's conduct to Sonntag. If Sonntag was Grover's supervisor and the plaintiff is suing him on that basis, the plaintiff

must demonstrate that Sonntag was personally involved in the denial of his medication—that Sonntag knew about Grover's misconduct and facilitated, approved or condoned it or "turn[ed] a blind eye for fear of what [he] might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).

The plaintiff has not alleged that Sonntag passed out the plaintiff's medication and personally refused to give him Famotidine or refused ask the HSU about it. The plaintiff first made Sonntag aware of the issue when he wrote to him on July 7, 2020, asserting that he had not received the Famotidine from Grover. The plaintiff says Sonntag falsely responded that the medication was not in the refill bin, but he does not say whether Sonntag checked the refill bin or whether he asked Sonntag to contact the HSU. The plaintiff does not allege that he had further contact with Sonntag after July 7 or that Sonntag had any role in distributing the plaintiff's medications. Although the plaintiff's allegations against Sonntag are sparse, he alleges that Sonntag was aware of Grover's behavior and he implies that Sonntag had the ability to do something about Grover's conduct but did not. He implies that Sonntag turned a blind eye to Grover's conduct and the plaintiff's pain. At this early stage, the court will allow the plaintiff to proceed on an Eighth Amendment claim against Sonntag, understanding that the evidence later may show that Sonntag had no authority to do anything about Grover's conduct.

The plaintiff also seeks to proceed on a state law claim of negligence against the defendants for refusing to distribute his medication and falsifying

his medical records. The court will exercise supplemental jurisdiction over the plaintiff's state law negligence claims. 28 U.S.C. §1367.

The court will not permit the plaintiff to proceed on a claim that the defendants' conduct violated prison policies or regulations. Section 1983 protects against *constitutional* violations. It does not protect against violations of departmental or prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003).

## II. Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Sonntag and Grover. Under the informal service agreement, the court **ORDERS** the defendants to respond to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are inmates at all other prison facilities must submit the original

document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will

only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take

other required actions by the deadlines the court sets, the court may dismiss

the case based on his failure to diligently pursue it. The parties must notify the

Clerk of Court of any change of address. The court also advises the plaintiff

that it is his responsibility to promptly notify the court if he is released from

custody or transferred to a different institution. The plaintiff's failure to keep

the court advised of his address may result in the court dismissing the case

without further notice.

The court will include a guide prepared by court staff to address common

questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

Litigants' Common Questions," this guide contains information that the

plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 2nd day of March, 2021.

BY THE COURT:

_____

HON. PAMELA PEPPER
**Chief United States District Judge**

11